UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

AMY AQUINO, *an individual*

Plaintiff,

v.

LEPRINO FOODS COMPANY,
*a Colorado Company*

Defendant.

Case No.  1:24-cv-00964-HBK

ORDER DENYING DEFENDANT'S
MOTION FOR SUMMARY JUDGMENT[1]

(Doc. 24)

Pending is Defendant Leprino Foods Company's Motion for Summary Judgment ("MSJ"), filed January 22, 2026.  (Doc. 24).[2]  Plaintiff Amy Aquino filed an Opposition, and Defendant filed a Reply.  (Docs. 25, 26).  The Court heard oral argument on the MSJ on April 3, 2026.  (Doc. 28).  For the reasons below, the Court denies Defendant's MSJ..

**I.      BACKGROUND**

**A. Procedural History**

Plaintiff proceeds on her Complaint[3] alleging that, while employed by Defendant at age

---

[1] Both parties have consented to the jurisdiction of a magistrate judge in accordance with 28 U.S.C. §636(c)(1).  (Doc. 10).

[2] All document and page numbers are to the respective pleadings' document number and page number as reflected on the Court's Case Management and Electronic Filing System (CM/ECF).

[3] This case was removed due to diversity jurisdiction.  In the state court action, Plaintiff had named Defendants Does 1-100.  (Doc. 1).  The inclusion of fictious defendants is improper in federal court.

nineteen, she was subjected to ongoing sexual harassment by three coworkers, that her complaints to team leaders did not stop the conduct, and that the harassment escalated until she no longer felt safe at work and resigned.  (*See generally* Doc. 1).  The Court previously granted Defendant's Motion for Partial Judgment on the Pleadings, dismissing the first four causes of action of Plaintiff's Complaint.  (Doc. 19).  Plaintiff proceeds on her fifth through eighth causes of action: (1) wrongful constructive termination in violation of public policy (Count V); (2) violation of the Ralph Civil Rights Act, Civil Code §51.7 (Count VI); (3) violation of the Tom Bane Civil Rights Act, Civil Code §52.1 (Count VII); and (4) common law negligent hiring, supervision, training, and retention (Count VIII).  (Doc. 1 at 14-20, ¶¶ 75-111).

**B. Allegations**

The relevant events occurred between February and August 2022, while Plaintiff worked in the "on-demand labor pool" at Defendant's Lemoore West facility.  (Doc. 1 at 5-8).  She alleges, escalating sexual harassment by three co-workers—Darrell, Sergio, and Gabriel Rascon—including repeated unwanted comments and advances, attempts to touch her, an anonymous note left on her car, and ultimately an incident in which Rascon restricted her movement, forced a hug, and touched her lower back after walking her to her car over her objection.  (Doc. 1 at 5–8; Doc. 25-2 at 13–15, 21–23, 29–30, 33–34).

Plaintiff testified she reported Darrell's and Sergio's conduct and the note to group leader Hector Lemus, [4] who told her to "stay clear of weird people" and said similar conduct "happens a lot," which led her to believe HR involvement was unnecessary and that the behavior was commonplace.  (Doc. 25-2 at 21, 23–24).  She further testified that, after the car-hug incident with Rascon, she reported his conduct to trainer Joshua Contreras and group leader Robert Sanchez.  (Doc. 25-2 at 30, 38–39).  According to Plaintiff, Sanchez stated that Rascon had done similar things to another employee and later joked about walking Plaintiff to her car.  (Doc. 25-2 at 39– 40).

*Provience v. Valley Clerks Tr. Fund*, 509 F. Supp. 388, 392 (E.D. Cal. 1981).  Plaintiff did not object to removal or seek to substitute the John Doe defendants at the time of removal.  Thus, once removed, the John Doe defendants are dismissed.  *Id*.

[4] Spelled "Lumes" in the Complaint.

2

Plaintiff ultimately resigned on August 30, 2022, stating she could no longer work for Defendant due to sexual harassment and that she feared physical harm in the loud, often isolated work environment among larger male coworkers.  (Doc. 25-2 at 41–43, 48–49).

**C.  Arguments and Record Before the Court**

Defendant's MSJ is supported by: its Memorandum of Points and Authorities (Doc. 24 at 5-27); the Declaration of counsel Lucero Cordovo Arellanes (Doc. 24-1), with various exhibits, including excerpts and exhibits from Plaintiff's deposition (Exhibit A), Defendant's Rule 30(b)(6) witness Lisa Getz-Prater (Exhibit B), excerpts from the deposition of Joshua Andrew Contreras (Exhibit C), excerpts from the deposition of Hector Gabriel Lemus (Exhibit D), excerpts from the deposition of Robert A. Sanchez (Exhibit E), excerpts from the deposition of Sergio De La Torre (Exhibit F), and email exchanges between the parties' counsel (Exhibits G-J); the Declaration of Lisa Getz-Prater (Doc. 24-2), with two exhibits, including the Leprino's Lemoore West organizational chart (Exhibit A) and a separation report created by Leprino after Plaintiff's resignation (Exhibit B); and Defendant's Separate Statement of Undisputed Facts (Doc. 24-3).

Defendant principally argues: (1) Plaintiff's working conditions were not intolerable as a matter of law; (2) Defendant lacked actual or constructive notice of harassment during Plaintiff's employment; (3) Plaintiff cannot show "violence" or "threat of violence" within the meaning of the Ralph Act, or threats/coercion under the Bane Act, and in any event vicarious liability is unavailable; and (4) Plaintiff cannot prove negligent supervision/retention because Defendant had no prior notice of any propensity to engage in misconduct. (Doc. 24 at 15–27).

Plaintiff's Opposition includes: a Memorandum of Points and Authorities (Doc. 25); the Declaration of Amy Aquino (Doc. 25-1)[5]; the Declaration of Plaintiff's attorney, Allison M. Schulman (Doc. 25-2), with various exhibits, including excerpts from the deposition of Plaintiff

---

[5] Defendant contends Plaintiff's Declaration "contradicts Plaintiff's deposition admissions" and "should be disregarded."  (Doc. 26 at 5, 13).  Defendant does not point to contradictions in the declaration, but, rather, characterizes the declaration as "attempt[ing] to exaggerate and embellish the stories that she told at her deposition."  (*Id.* at 7).  At most, this raises credibility issues which is better suited for a jury.  *See Messick v. Horizon Indus. Inc.*, 62 F.3d 1227, 1231 (9th Cir. 1995) ("the non-moving party is not precluded from [an affidavit] elaborating upon, explaining or clarifying prior testimony elicited by opposing counsel on deposition").

Amy Aquino (Exhibit 1), excerpts from the deposition of Defendant's Person Most Knowledgeable Lisa Getz-Prater (Exhibit 2), a notice of the deposition of Getz-Prater (Exhibit 3), excerpts from the deposition of Joshua Andrew Contreras (Exhibit 4), excerpts from the deposition of Hector Gabriel Lemus (Exhibit 5), excerpts from the deposition of Gabriel Rascon (Exhibit 6), and excerpts from the deposition of Robert A. Sanchez (Exhibit 7); Plaintiff's Statement of Genuine Disputes of Material Fact (Doc. 25-3); and Plaintiff's Evidentiary Objections to Defendant's Evidence (Doc. 25-4).  Plaintiff argues that the record shows ongoing verbal and physical sexual harassment over her six-month employment, that the cases relied upon by Defendant involve materially different facts and more robust corrective action, and that there are triable issues as to whether her complaints to group leaders and trainer gave Defendant constructive notice. (Doc. 25 at 15–18).  With respect to the Ralph Act and Bane Act claims, Plaintiff assets in largely conclusory terms that the record contains sufficient evidence to create a triable issue of fact and that Defendant ratified the misconduct by failing to take adequate corrective action after she reported it.  (*Id.* at 16-17).

Defendant's Reply is accompanied by a Memorandum of Points and Authorities (Doc. 26); the Declaration of Defendant's attorney, Sandra L. Rappaport (Doc. 26-1), along with excerpts and exhibits from the deposition of Plaintiff Amy Aquino (Exhibit A); Defendant's Response to Plaintiff's Objections to Evidence (Doc. 26-2); and a Status of Separate Statement of Undisputed Material Facts (Doc. 26-3).  Defendant's Reply reiterates that Plaintiff's conditions were not intolerable, that Defendant had no notice, that the Ralph/Bane claims are legally and factually deficient, and that Plaintiff cannot show prior notice sufficient to support negligent supervision or retention. (Doc. 26 at 5–14).  Defendant also challenges Plaintiff's Declaration as embellishing her deposition testimony, raising credibility issues. (Doc. 26 at 5–7, 13).

The Court has reviewed all admissible evidence, including deposition transcripts, declarations, exhibits, statements of fact and responses, and evidentiary objections.  The omission of any item from this Order reflects no failure to consider it.

### D.  Key Deposition/Declaration Evidence

The order contains other detailed, summary of deposition and declaration testimony. For

4

purposes of this ruling, the material points include:

- Plaintiff's testimony that she was repeatedly subjected to unwanted sexual comments and advances by three coworkers throughout her six-month tenure, including attempts to touch her, and one incident where Rascon blocked her ability to enter/leave her car until she submitted to a hug in which he put his hand down her back. (Doc. 25-2 at 13–15, 21–23, 29–30, 33–34).

- Plaintiff's testimony that she reported harassment and the car note to group leader Lemus, who responded that "it happens a lot" and advised her to avoid "weird people," which dissuaded her from escalating to HR. (Doc. 25-2 at 21, 23–24).

- Plaintiff's testimony that she reported Rascon's conduct to trainer Contreras and group leader Sanchez, and that Sanchez indicated Rascon had harassed another employee before and later made light of her concerns. (Doc. 25-2 at 30, 38–40).

- Plaintiff's understanding, based on training, that she could report harassment to "anyone higher up," which she understood to include group leaders, and her testimony that group leaders and supervisors functioned as a pair and that group leaders directed work, monitored performance and safety, and could discipline her. (Doc. 25-2 at 11, 18–21; Doc. 25-3 at 2–4, ¶ 2).

- Contreras's and Lemus's testimony that, as group leaders, they supervise and correct employees in real time, monitor performance, and are required by training and job description to elevate sexual harassment complaints to supervisors—and that failure to report could result in discipline. (Doc. 25-2 at 98–103, 117–19, 126–27, 137, 159–64).

- Evidence that Defendant's internal investigation did not interview at least some of the individuals Plaintiff identified (including Sergio and Sanchez) and that Rascon received no discipline. (Doc. 25-2 at 58–66, 140–43).

**E.  Undisputed and Dispute Facts**

The parties agree that Plaintiff worked for Defendant from February 14, 2022, until her resignation on August 30, 2022; that she received Defendant's handbook and harassment policy; that she received anti-harassment training; and that Lemus and Sanchez were among her group

5

leaders, and Contreras served as her trainer.  (Doc. 25-3 at 2, 4–5, 40, 43, ¶¶ 1, 3–4, 10, 12–13).

Plaintiff, however, disputes Defendant's characterization that group leaders and trainers lack supervisory authority, instead offering evidence that group leaders performed core supervisory functions and were understood by employees to be persons to whom harassment could be reported.  (Doc. 25-2 at 18–21, 98–103, 117–19, 159–64; Doc. 25-3 at 2–4, ¶ 2, ¶ 14).  Plaintiff also disputes Defendant's efforts to limit the scope, frequency, and physical nature of the harassment and to confine Rascon's conduct to a single day.  (Doc. 25-3 at 5–39, ¶¶ 5–8).

## II.    LEGAL STANDARD

Summary judgment is appropriate when there is "no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).  Summary judgment should be entered "after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial."  *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).  The moving party bears the "initial responsibility" of demonstrating the absence of a genuine issue of material fact.  *Id.* at 323.  An issue of material fact is genuine only if there is sufficient evidence for a reasonable factfinder to find for the non-moving party, while a fact is material if it "might affect the outcome of the suit under the governing law."  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

If the moving party meets its burden, the burden then shifts to the opposing party to present specific facts that show there to be a genuine issue of a material fact.  *See* Fed. R. Civ. P. 56(e); *Matsushita Elec. Indus. Co. Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986).  An opposing party "must do more than simply show that there is some metaphysical doubt as to the material facts."  *Matsushita*, 475 U.S. at 587.  The party is required to tender evidence of specific facts in the form of affidavits, and/or admissible discovery material, in support of its contention that a factual dispute exists.  Fed. R. Civ. P. 56(c); *Matsushita*, 475 U.S. at 586 n.11.  The opposing party is not required to establish a material issue of fact conclusively in its favor; it is sufficient that "the claimed factual dispute be shown to require a jury or judge to resolve the parties' differing versions of the truth at trial."  *T.W. Electrical Serv., Inc. v. Pacific Elec.*

6

*Contractors Assoc.*, 809 F.2d 626, 630 (9th Cir. 1987).  However, "failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial." *Celotex*, 477 U.S. at 323.  In other words, "summary judgment should be granted where the nonmoving party fails to offer evidence from which a reasonable jury could return a verdict in its favor." *Triton Energy Corp. v. Square D. Co.*, 68 F.3d 1216, 1221 (9th Cir. 1995).

The court must apply standards consistent with Rule 56 to determine whether the moving party demonstrated there is no genuine issue of material fact and showed judgment to be appropriate as a matter of law.  *See Henry v. Gill Indus., Inc.*, 983 F.2d 943, 950 (9th Cir. 1993).  "[A] court ruling on a motion for summary judgment may not engage in credibility determination or the weighing of evidence." *Manley v. Rowley*, 847 F.3d 705, 711 (9th Cir. 2017) (citation omitted).  The evidence must be viewed "in the light most favorable to the nonmoving party" and "all justifiable inferences" must be drawn in favor of the nonmoving party.  *Orr v. Bank of America, NT & SA*, 285 F.3d 764, 772 (9th Cir. 2002).

## III.    ANALYSIS

### A. Wrongful Constructive Termination in Violation of Public Policy

To establish a constructive discharge, an employee must show that "the employer either intentionally created or knowingly permitted working conditions that were so intolerable or aggravated at the time of the employee's resignation that a reasonable employer would realize that a reasonable person in the employee's position would be compelled to resign." *Atalla v. Rite Aid Corp.*, 306 Cal. Rptr. 3d 1, 21 (Ct. App. 2023) (quoting *Turner v. Anheuser-Busch, Inc.*, 7 Cal.4th 1238, 1251 (1994)) (internal quotation marks omitted).  The requisite knowledge or intent must exist in the employer or its officers, directors, managing agents, or supervisory employees. *Id.* at 21–22.  Adverse working conditions must be "unusually aggravated or amount to a continuous pattern" before a constructive discharge will be found, and the conditions must be sufficiently extraordinary and egregious to overcome a reasonable employee's motivation to remain employed. *Kruitbosch v. Bakersfield Recovery Servs., Inc.*, 336 Cal. Rptr. 3d 815, 835 (Ct. App. 2025) (quoting *Turner*, 7 Cal. 4th at 1246, 1254).

Constructive discharge is ordinarily a question of fact. *Wheeler v. Home Depot USA, Inc.*,

794 F. App'x 617, 618 (9th Cir. 2019); *McGinest v. GTE Serv. Corp.,* 360 F.3d 1103, 1112 (9th Cir. 2004); *Kruitbosch*, 336 Cal. Rptr. 3d at 835.

   1. Whether group leaders can be deemed "supervisors"

  Defendant argues that Plaintiff's constructive discharge claim fails because she only reported to non-supervisory employees—group leaders and a trainer—and therefore Defendant lacked the knowledge required under *Turner*. (Doc. 24 at 18–20; Doc. 26 at 10–12).  Defendant relies on Getz-Prater's declaration and an organizational chart to argue that group leaders and trainers have no supervisory authority. (Doc. 24-2; Doc. 24 at 18–20).

  Both sides cite to Gov't Code § 12926(t), which defines "supervisor" to include individuals who have authority, in the employer's interest, to hire, transfer, suspend, lay off, recall, promote, discharge, assign, reward, or discipline employees, or who have responsibility to direct them or adjust their grievances, using independent judgment.  Cal. Gov't Code § 12926(t). Whether a particular employee qualifies as a "supervisor" under this definition is often a fact question.  *See, e.g.*, *Kelley v. The Conco Companies*, 126 Cal. Rptr. 3d 651, 671 n.13 (Ct. App. 2011); *Chapman v. Enos*, 10 Cal. Rptr. 3d 852, 859 (Ct. App. 2004).

  Here, there is evidence that group leaders directed work, monitored performance and safety, corrected employees in real time, and were expected by both their training and their job description to receive and elevate sexual harassment complaints.  (Doc. 25-2 at 98–103, 117–19, 126–27, 159–64; Doc. 25-3 at 2–4, ¶ 2).  Plaintiff testified she understood she could report harassment to "anyone higher up," which she understood to include group leaders, who functioned in tandem with supervisors.  (Doc. 25-2 at 11, 18–21).  Viewing this evidence in Plaintiff's favor, a reasonable jury could find that Lemus and Sanchez were "supervisors" within the meaning of § 12926(t), and that their knowledge can be imputed to Defendant. [6]

  The Court recognizes that some cases emphasize relatively narrow applications of "supervisor" in FEHA contexts when the evidence of independent authority is thin.  *See*, e.g., *Kelley*, 126 Cal. Rptr. 3d at 671 n.13 (noting plaintiff bears burden at trial); *Chapman*, 10 Cal.

---

[6] Because the Court finds that there is a question of fact as to whether the group leaders were supervisors, the Court does not address the alternative theories related to the trainer or manager.

Rptr. 3d at 859.  These cases, however, turned on the specific factual record and do not preclude a jury finding here based on this record.

### 2.    Intolerable working conditions and causation

Plaintiff offers evidence that over six months she experienced repeated, unwanted sexual comments and advances by three coworkers, escalating to a forced hug in a parking lot where Rascon allegedly blocked her movement and placed his hand down her back, and that she repeatedly reported harassment to group leaders and a trainer without adequate corrective action. (Doc. 25-2 at 13–15, 21–23, 29–30, 33–34, 38–40).  She further testified that the environment made her feel physically unsafe due to the loud, isolated work areas and larger male coworkers. (Doc. 25-2 at 48–49).

The Court is not persuaded by the cases cited by Defendant.  In *Kruitbosch,* 336 Cal. Rptr. 3d at 821, the Court of Appeal affirmed dismissal of a constructive discharge claim where the alleged harassment was limited and the employer's response was not shown to be egregiously deficient.  Here, by contrast, a jury could find harassment by multiple coworkers over nearly the entire employment period, continued harassment after complaints, and responses that minimized Plaintiff's concerns or discouraged further reporting. (Doc. 25-2 at 17–18, 21–24, 30, 39–40).

Similarly, *Campbell v. Kansas State Univ.,* 780 F. Supp. 755, 766 (D. Kan. 1991) and *Cajamarca v. Regal Ent. Grp.*, 863 F. Supp. 2d 237, 243-45 (E.D.N.Y. 2012) involved employers that promptly implemented corrective measures and offered concrete alternatives.  In contrast, Defendant's asserted response here was largely to tell Plaintiff to avoid "weird" coworkers and offering reinstatement without specified protections.  (Doc. 24 at 15–18; Doc. 25-2 at 21, 39–40, 58).  In *Brooks v. City of San Mateo,* 229 F.3d 917, 921-22 (9th Cir. 2000), there was a single incident followed by swift corrective action, whereas Plaintiff alleges an ongoing pattern of harassment with no corrective action.  And *Smith v. Cnty. of Humboldt,* 240 F. Supp. 2d 1109, 1118, 1120-21 (N.D. Cal. 2003) found conduct over ten days not pervasive; by contrast, Plaintiff alleges six months of harassment and continued distress despite her reports. (Doc. 25-2 at 13, 29–30, 33–34).

Considering the record in the light most favorable to Plaintiff, a reasonable jury could

conclude that Defendant, through its supervisory employees, knowingly permitted unusually aggravated, continuous harassment such that a reasonable person in Plaintiff's position would feel compelled to resign. *Atalla*, 306 Cal. Rptr. 3d at 21–22; *Turner*, 7 Cal. 4th at 1246, 1254. Summary judgment on the constructive termination claim is therefore inappropriate.

### B. The Ralph Civil Rights Act and The Tom Bane Civil Rights Act

The Ralph Act guarantees that "[a]ll persons … have the right to be free from any violence, or intimidation by threat of violence," committed against them or their property because of their sex or other protected characteristic. Cal. Civ. Code § 51.7(a); *Winarto v. Toshiba Am. Elecs. Components, Inc.*, 274 F.3d 1276, 1289 (9th Cir. 2001). Under *Winarto*, the question is whether a reasonable person in the plaintiff's position would have been intimidated and perceived a threat of violence. *Id.* at 1289–90; *Zamora v. Sacramento Rendering Co.*, 2007 WL 137239, at *7 (E.D. Cal. Jan. 17, 2007).

The Bane Act, Cal. Civ. Code § 52.1, provides a civil cause of action where a person interferes, or attempts to interfere, with an individual's exercise or enjoyment of rights secured by federal or state law, "by threats, intimidation, or coercion." Cal. Civ. Code § 52.1(a); *Jones v. Kmart Corp.*, 949 P.2d 941, 942 (1998); *Austin B. v. Escondido Union Sch. Dist.*, 57 Cal. Rptr. 3d 454, 472 (Ct. App. 2007). In cases involving inherently coercive violations, a plaintiff must show specific intent—that the right at issue is clearly delineated and applicable, and that the defendant acted with the purpose (or at least reckless disregard) of interfering with that right. *Cornell v. City & Cnty. of San Francisco*, 17 Cal. App. 5th 766, 801–03 (Ct. App. 2017); *Sandoval v. Cty. of Sonoma*, 912 F.3d 509, 519 (9th Cir. 2018); *Apothio, LLC v. Kern Cnty.*, 599 F. Supp. 3d 983, 1015 (E.D. Cal. 2022).

Both the Ralph and Bane Acts can apply in employment settings. *Winarto*, 274 F.3d at 1289; *Washington v. Sierra Aluminum Co.*, 2016 WL 11967192, at *4 n.2 (C.D. Cal. July 29, 2016) (recognizing Ralph/Bane employment claims). Some courts have emphasized their "anti-hate-crime" origins and questioned their fit in employment disputes focused solely on harassment or discrimination without clear threats or force. The weight of authority, however, permits such claims where the record supports violence, threats of violence, or comparable

10

intimidation.

    1.  Sufficiency of evidence of "violence" or "threat of violence" and coercion

Defendant argues the evidence in the record is insufficient to find a Ralph Act violation[7] and Bane Act claim.  Specifically, Defendant argues that Plaintiff identifies no "physical, destructive act" constituting violence and no credible threat of violence, and that, in any event, vicarious liability is unavailable. (Doc. 24 at 21–24; Doc. 26 at 12–14).   The Court agrees Plaintiff does not allege overt physical violence or express threats of violence, and Plaintiff's showing under these statutes is comparatively weaker than her constructive discharge and negligence theories.  Indeed, the conduct alleged is not paradigmatic "hate-crime" violence.  Nonetheless, the Court finds *Zamora* and *Macias v. Lange, 2016 WL 1274762 (S.D. Cal. Apr. 1, 2016),* counsel against summary judgment.

In *Zamora*, the court denied summary judgment on Ralph and Bane claims where a coworker allegedly attempted to kiss the plaintiff and then blocked her exit from a room, holding that "blocking someone's exit" could reasonably be perceived as a threat of violence even absent physical injury or explicit threats. 2007 WL 137239, at *7–8.  The court concluded this even though the plaintiff testified in her deposition that she had no difficulty moving past the coworker's arm, that he did not make any further attempt to detain her, that he did not touch her as she left, that he did not follow or chase her, and that he never verbally threatened her. *Id.*  In *Macias*, the court denied summary judgment where the defendant landlord locked doors, grabbed the plaintiff, commented on her body, and attempted to kiss her. 2016 WL 1274762, at *17.

Here, Plaintiff testified Rascon walked her to her car over her objection, stated she could not leave unless she gave him a hug, physically blocked her from entering her car, and then forced a full hug while placing his hand down her back. (Doc. 25-2 at 29–30, 33–34, 47–48).  A jury could reasonably view those actions as restricting her movement and coercing unwanted physical contact in a manner comparable to, and arguably more egregious than, the blocking-exit conduct in *Zamora*.  Although Plaintiff testified that she did not believe she actually suffered

---

[7] At oral argument, Defendant withdrew its statute of limitations argument as to the Ralph Act claim.

11

"violence" in the narrow, lay sense, she also testified that she feared physical harm under the circumstances. (Doc. 25-2 at 48–49). Under *Winarto* and *Zamora*, the question is framed from the perspective of a reasonable person in Plaintiff's position, not solely by Plaintiff's retrospective characterization. *Winarto*, 274 F.3d at 1289–90; 2007 WL 137239, at *7.

2. Vicarious liability and ratification

Defendant contends it cannot be held liable for non-supervisory coworkers' acts absent prior notice. (Doc. 24 at 22–24). Plaintiff responds that Defendant ratified its employees' conduct by (1) minimizing her complaints, (2) failing to conduct a thorough investigation, and (3) failing to discipline anyone. (Doc. 25 at 17–18).

Under California law, an employer can be liable for intentional torts by employees where it either authorizes the tortious conduct or ratifies it after the fact, including by failing to investigate or discipline after notice. *Garcia ex rel. Marin v. Clovis Unified Sch. Dist.*, 627 F. Supp. 2d 1187, 1201–02 (E.D. Cal. 2009); *C.R. v. Tenet Healthcare Corp.*, 169 Cal. App. 4th 1094, 1110–12 (Ct. App. 2009); *Baptist v. Robinson*, 143 Cal. App. 4th 151, 169–70 (Ct. App. 2006). Under the Ralph Act, employers may be liable for acts of their agents. *Winarto*, 274 F.3d at 1290; *Karnazes v. Cnty. of San Mateo*, 2010 WL 3171501, at *2 (N.D. Cal. Aug. 11, 2010)*. Private employers may similarly be liable under the Bane Act via ratification. *Peralta v. United States*, 475 F. Supp. 3d 1086, 1097 (C.D. Cal. 2020); *Darosa v. Lowe's Home Improvement*, 2025 WL 578453, at *2 (E.D. Cal. Feb. 21, 2025), report and recommendation adopted, 2025 WL 859856 (E.D. Cal. Mar. 19, 2025). But see Boules v. United States*, 2024 WL 2699810, at *3 (C.D. Cal. Apr. 9, 2024) (granting motion to dismiss because the complaint did not contain allegations of ratification by the employer to support a Bane Act claim).

As discussed, the supervisor status of group leaders is a triable issue. If a jury finds that Lemus and Sanchez were supervisors and credits Plaintiff's testimony that they knew of similar past conduct and yet did not elevate or effectively address her complaints, a jury could conclude that Defendant, through its managing agents or supervisors, ratified the misconduct by failing to fully investigate, discipline, or otherwise remediate. (Doc. 25-2 at 21, 23–24, 39–40, 58–66, 140–43).

12

Given *Zamora* and *Macias*, and viewing the record in Plaintiff's favor, the Court cannot conclude as a matter of law that no reasonable jury could find the requisite intimidation, threat of violence, or coercion to support Ralph and Bane claims, nor that Defendant is insulated from liability. The Court emphasizes that these claims are relatively marginal and may ultimately fail at trial, but their disposition is better left to the trier of fact.

**C. Negligent hiring, supervision, training, and retention**

Plaintiff clarified at the hearing that she pursues this claim in negligent supervision and negligent retention grounds only.

"An employer may be liable to a third person for the employer's negligence in . . . retaining an employee who is incompetent or unfit." *Phillips v. TLC Plumbing, Inc.*, 91 Cal. Rptr. 3d 864, 868 (Ct. App. 2009); *Horn v. Coldwater Creek US Inc*, No. 213CV00413CASEX, 2016 WL 3921130, at *13 (C.D. Cal. July 18, 2016) (alteration in original) (quoting *Phillips*, 91 Cal. Rptr. 3d at 868) (internal quotation marks omitted). "To establish negligent supervision, a plaintiff must show that a person in a supervisorial position over the actor had prior knowledge of the actor's propensity to do the bad act." *Z.V. v. Cnty. of Riverside*, 189 Cal. Rptr. 3d 570, 581 (Ct. App. 2015).

Defendant argues that it reviewed personnel files and found no prior complaints or discipline involving harassment, violence, or threats against the relevant employees, and that Plaintiff offers no contrary evidence. (Doc. 24 at 27; Prater Decl. ¶ 9). Plaintiff, however, points to testimony that Lemus told her similar conduct "happens a lot," that she should stay away from "weird people," and that Sanchez stated Rascon "has done that to another employee before." (Doc. 25-2 at 21, 23–24, 39). A reasonable jury could view those statements as evidence of prior, similar misconduct known to persons in supervisory roles, and could conclude Defendant's response, essentially instructing Plaintiff to avoid the harassers, was inadequate.

If a jury finds that Lemus and Sanchez were supervisors, their knowledge of prior misconduct can be imputed to Defendant and can support both negligent supervision and negligent retention. *Z.V.*, 189 Cal. Rptr. 3d at 581; *Phillips*, 91 Cal. Rptr. 3d at 868. Given the record, Defendant has not demonstrated the absence of a triable issue on these theories.

Accordingly, summary judgment is denied as to Plaintiff's negligent supervision and negligent retention claims.

**IV. CONCLUSION**

Viewing the evidence in the light most favorable to Plaintiff and drawing all reasonable inferences in her favor, material disputes remain as to:

1. Whether Plaintiff's working conditions were so intolerable that a reasonable person would have felt compelled to resign, and whether Defendant, through supervisory employees, knowingly permitted those conditions;

2. Whether the alleged parking-lot incident and related conduct could constitute violence, threats of violence, intimidation, or coercion sufficient to sustain Ralph and Bane Act claims, and whether Defendant can be held vicariously liable or found to have ratified the conduct; and

3. Whether Defendant negligently supervised and retained employees in light of alleged prior knowledge of similar misconduct.

Accordingly, it is ORDERED:

1. Defendant's Motion for Summary Judgment (Doc. 24) is DENIED.

2. Unless either party files a written objection by May 11, 2026, consistent with Local Rule 270(a), the Court will refer this case for a settlement conference to a United State Magistrate.

Dated:    May 5, 2026   

HELENA M. BARCH-KUCHTA
UNITED STATES MAGISTRATE JUDGE